IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-177

 No. COA20-368

 Filed 4 May 2021

Cumberland County, Nos. 10 CVS 2964, 17 CVS 6272

JOHN C. CULBRETH, JR., Individually and Derivatively on Behalf of SOUTHEAST
DEVELOPMENT OF CUMBERLAND, LLC, and SOUTHEAST DEVELOPMENT
OF CUMBERLAND, LLC, Plaintiffs

 v.

CHRIS MANNING, Defendant

JOHN C. CULBRETH, JR., Derivatively on Behalf of SOUTHEAST
DEVELOPMENT OF CUMBERLAND, LLC, Plaintiff

 v.

GREEN VALLEY SOUTH LLC and SOUTHEAST DEVELOPMENT OF
CUMBERLAND, LLC, Defendants

 Appeal by Defendant Manning from Order entered 17 December 2019, by

Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of

Appeals 10 February 2021.

 Brooks, Pierce, McClendon, Humphrey & Leonard, L.L.P, by Charles E. Coble
 and Walter L. Tippett, Jr., for plaintiff-appellee.

 Hutchens Law Firm, by Natasha M. Barone, H. Terry Hutchens, J. Scott
 Flowers, and J. Haydon Ellis, for defendant-appellant Chris Manning.

 HAMPSON, Judge.
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 Factual and Procedural Background

¶1 Chris Manning (Defendant) appeals from the trial court’s Order dated 17

 December 2019, which granted John C. Culbreth, Jr., (Plaintiff), individually and

 derivatively on behalf of Southeast Development of Cumberland, LLC’s (Southeast)

 Motion to Enforce Settlement Agreement, which included entering judgment against

 Defendant in the amount of $170,349.00. The Record reflects the following relevant

 facts:

¶2 Beginning in 2003, Plaintiff and Defendant formed Southeast, a member-

 managed, limited liability company organized in the State of North Carolina, of which

 they each owned a fifty-percent interest. In 2010, Plaintiff and Defendant began to

 dispute the management of Southeast.

¶3 Plaintiff filed a complaint alleging Defendant mismanaged finances and record

 keeping (the 2010 Action), and ultimately, on 14 February 2011, the Cumberland

 County Superior Court entered an Order (2011 Referee Order) appointing Lawrence

 W. Blake, CPA, as a referee under N.C. R. Civ. P. 53 to “collect, review and examine

 the financial, banking, corporate and other records of [Southeast]” to determine the

 members capital accounts, identify Southeast’s assets and liabilities, and prepare a

 balance sheet and statement of profit and loss. The 2011 Referee Order directed

 Blake to file this report with the trial court on or before 6 June 2011, and provided:

 “This Court retains jurisdiction of this matter to enter further Orders necessary or
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 required by the Referee or the parties to enforce the terms of this Order.” Accordingly,

 Blake filed reports on 3 June 2011, 16 August 2011, and again on 12 June 2012.

¶4 However, five years later, on 23 August 2017, Plaintiff derivatively on behalf

 of Southeast, instituted a second action against Defendant and Green Valley South

 LLC (Green Valley), a limited liability company of which Defendant owned a fifty-

 percent interest (the 2017 Action).

¶5 On 10 December 2018, the parties entered into a Settlement Agreement,

 agreeing “to resolve and to settle all controversies between them, including any

 claims each may have asserted or could have asserted in the Subject Actions[.]”1 The

 Settlement Agreement provided in paragraph 2(e):

 Plaintiff and Defendant will reconcile their respective capital
 accounts in Southeast, pursuant to a report (“the Blake Report”)
 to be prepared by L. W. Blake, CPA (“Blake”), who was previously
 appointed by the Court to serve as a referee in the 2010 Action.
 The Blake Report will be completed by February 29, 2019, and
 shall direct that either Plaintiff or Defendant shall make such
 payment within 30 days as is necessary to balance their
 Southeast capital accounts. The Blake Report shall be prepared
 consistent with the following terms:

 (i) Defendant shall deposit $25,000.00 (the “Blake Deposit”)
 with Blake to pay his fees and expenses in completing the
 Blake Report. Defendant shall receive a credit toward his
 Southeast capital account equal to the amount of the Blake
 Deposit actually expended and to a refund of the remainder.

 1 The Settlement Agreement defined, “the 2010 Action and the 2017 Action may be

 referenced herein as ‘the Subject Actions[.]’ ” (emphasis in original).
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 (ii) Plaintiff, Defendant, and their respective accounting and
 legal advisors shall be entitled to communicate with Blake in
 regard to his preparation of the Blake Report so long as any
 written communications are contemporaneously provide[d] to
 counsel for the other party. Blake shall be similarly entitled
 to seek information from the parties and their advisors.

 (iii) Defendant shall be entitled to a credit toward his
 Southeast capital account equal to the Settlement Payment.
 Blake shall determine whether the Settlement Payment, or
 any portion thereof, should be deducted from Plaintiff’s capital
 account.

 (iv) The Blake Report shall be binding and not subject to
 appeal. It may be converted to a judgment in the 2010 Action
 upon the motion of either Plaintiff or Defendant if the party
 directed to make the required payment. If the party directed
 to make a payment completes his obligation to do so, then the
 2010 Action shall be promptly dismissed by Plaintiff or by
 order of the Court, together with cancellations of all Notices of
 Lis Pendens and similar documents clouding title to real
 property that any Party has filed in regard to the 2010 Action.

 (emphasis in original). In releasing the parties from all claims, the Settlement

 Agreement maintained “this release shall not be construed to release any claim

 arising in favor of or against any Party due to an alleged breach of this Agreement or

 failure to comply with the Blake Report.”

¶6 The next day, on 11 December 2018, the parties filed a Joint Motion for

 Approval of Discontinuance of Derivative Proceedings. The parties’ Joint Motion

 explained “the claims in File No. 10 CVS 2964 will be administered with the

 assistance of L.W. Blake, CPA, who was previously appointed by this Court as a
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 referee in that matter;” and provided the claims in the 2010 Action would be

 dismissed with prejudice “upon the completion of Mr. Blake’s Report and the parties

 adherence thereto[.]” On 17 December 2018, the trial court entered an Order

 Approving Discontinuance of Derivative Proceedings (Approval Order), consistent

 with the parties’ Joint Motion, which provided:

 The derivative claims in File No. 10 CVS 2964 shall be
 administered and adjudicated as set forth in Settlement
 Agreement. This Court shall retain jurisdiction for entry of a
 judgment or such other orders as may be necessary to enforce or
 complete the settlement, if necessary. Otherwise, Plaintiffs’
 counsel is authorized to file a dismissal of the derivative claims
 without further order of the Court[.]

 (Emphasis added).

¶7 Then, on 18 October 2019, Plaintiff filed a Motion to Show Cause and for relief

 from the Approval Order on the basis that Blake failed to complete the Report by the

 29 February 2019, date agreed upon in the Settlement Agreement. Plaintiff further

 alleged that on 21 June 2019, “Blake committed to complete his report by August 1,

 2019.” Yet, “Blake failed to complete his report by August 1, 2019[,] and, further,

 Blake “failed to communicate in any manner whatsoever since June 21, 2019” and

 did not respond to communications from counsel dated 19 September and 4 October

 2019. On 22 October 2019, the trial court entered an Order for Completion of Capital

 Account Report (Completion Order), which ordered:
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 (1) On or before 5:00 P.M. on Tuesday, November 12, 2019, the
 Referee shall serve the report contemplated by paragraph 2(e) of
 the parties’ Settlement Agreement to each of the parties’ counsel
 of record; and

 (2) The hearing on the Motion is continued . . . unless such
 matters have been rendered moot by the Referee’s service of the
 report, as required above.

 On 12 November 2019, Blake transmitted his Report (the Blake Report) to the trial

 court. The Blake Report provided, “As of December 31, 2018 the capital account of

 Chris Manning was a deficit of $501,965, the capital account of John C. Culbreth was

 a deficit of $331,616. I have attached Exhibit A to this letter.” The Blake Report

 continued to identify: related parties, open assets or unpaid liabilities that Blake did

 not consider to be “related party entities,” those open assets and unpaid liabilities

 that Blake did consider to be related party entities, partnership investments,

 settlement payments, cashless transfers of real estate, and a 2011 Curtailment

 Agreement with First Bank.

¶8 Blake also attached Exhibit B:

 The purpose of Exhibit B is to provide the Court with a summary
 that may be useful in quantifying the facts and circumstances
 provided in previous paragraphs. As a starting point, Exhibit B
 uses the December 31, 2018 capital accounts as shown on Exhibit
 A. Calculation of the partner’s capital accounts is my prime
 directive as described in paragraph 2(e) of your December 17,
 2018 order. Presented in Exhibit B are three additional financial
 groupings that are not strictly capital contributions or
 distributions.
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 (emphasis added).

¶9 On 5 December 2019, Plaintiff, individually and derivatively on behalf of

 Southeast, filed a Motion to Enforce Settlement Agreement. In his Motion, Plaintiff

 requested the trial court enter a judgment directing Defendant pay Plaintiff

 $170,349.00—the difference in the deficits of Plaintiff and Defendant’s respective

 capital accounts. The trial court heard Plaintiff’s Motion on 16 December 2019. That

 morning, around fifteen minutes before the hearing began, Blake filed an

 Amendment to the Blake Report (the Amendment), “intended to be responsive to

 paragraph 3(e) [sic]” of the Approval Order.2 The Amendment revised Exhibit B and

 stated “[b]ased on my calculations, the Plaintiff (Culbreth) is liable to the Defendant

 (Manning) in the amount of $261,530.”

¶ 10 The next day, on 17 December 2019, “[a]fter considering all competent matters

 of record, including the verified Motion [to Enforce], with exhibits, and other proper

 evidence submitted in support and in opposition to the Motion, together with the

 applicable law and the arguments of counsel,” the trial court entered its Order

 granting Plaintiff’s Motion to Enforce the Settlement Agreement and entering

 2 The Record reflects that at 5:26 p.m. on 15 December 2019, counsel for Defendant

 sent Blake an email with the subject line “Referee’s report,” to “follow[ ] up on [an] earlier
 conversation.” In the email, counsel requested “[Blake] consider filing an amendment to [the
 Blake] report as I have argued … is required under the Settlement Agreement and [the trial
 court’s] order and in that amendment set out the amount which either or both part[ies] must
 pay to balance their respective capital accounts at Southeast.”
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 Judgment against Defendant in the amount of $170,349.00 in 10 CVS 2964.

 Defendant timely appealed from the trial court’s Order on 15 January 2020.

 Issues

¶ 11 The dispositive issues on appeal are whether (I) the trial court’s Order is an

 order to enforce a settlement agreement or is an adoption of a referee’s report under

 N.C. R. Civ. P. Rule 53 for purposes of applying the correct standard of review; and

 (II) in turn, applying the proper standard of review, the trial court erred in entering

 the Order granting Plaintiff’s Motion to Enforce the Settlement Agreement and in

 entering Judgment against Defendant.

 Analysis

 I. Standard of Review

¶ 12 The status of the Blake Report as a Rule 53 referee report is relevant for the

 determination of the appropriate standard of review to apply to the trial court’s

 Order. The parties dispute whether Blake was serving in his capacity as a referee

 under N.C. R. Civ. P. Rule 53 after the Settlement Agreement and Approval Order

 appointed him to create the Blake Report. Plaintiff contends, although not expressly

 appointed under Rule 53, Blake was acting his capacity as a Rule 53 referee because

 the Settlement Agreement and Approval Order directed him to review Southeast’s

 records and to subsequently create and file the Blake Report with the trial court.

 Thus, when the trial court entered its Order to enforce the Settlement Agreement
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 and entered Judgment against Defendant, it was adopting the Blake Report as a

 referee report. See N.C. Gen. Stat. § 1A-1, Rule 53(g) (2019). Defendant argues the

 Order should be treated as captioned—as an order to enforce a settlement agreement.

¶ 13 “[O]ur standards of review are dictated by the substance of the motion under

 consideration and the type of hearing conducted . . . .” Sfreddo v. Hicks, 266 N.C.

 App. 84, 88, 831 S.E.2d 353, 356 (2019) (citation omitted). “Appellate review of

 factual findings made by a referee and adopted by the trial court is limited to whether

 the challenged findings were supported by any competent evidence. Challenged legal

 conclusions are reviewed de novo.” Bullock v. Tucker, 262 N.C. App. 511, 518-19, 822

 S.E.2d 654, 659 (2018) (citations and quotation marks omitted). Meanwhile, “[a]

 motion to enforce a settlement agreement is treated as a motion for summary

 judgment for purposes of appellate review[,]” Williams v. Habul, 219 N.C. App. 281,

 288, 724 S.E.2d 104, 109 (2012) (citation and quotation marks omitted), and “[o]ur

 standard of review of an appeal from summary judgment is de novo[.]” In re Will of

 Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

¶ 14 Under Rule 53 of the North Carolina Rules of Civil Procedure,

 the court may, upon the application of any party or on its own
 motion, order a reference in the following cases:

 a. Where the trial of an issue requires the examination of a
 long or complicated account; in which case the referee may be
 directed to hear and decide the whole issue, or to report upon
 any specific question of fact involved therein.
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 b. Where the taking of an account is necessary for the
 information of the court before judgment, or for carrying a
 judgment or order into effect.

 N.C. Gen. Stat. § 1A-1, Rule 53(a)(2) (2019).

¶ 15 Furthermore, “[t]he referee shall prepare a report upon the matters submitted

 to him by the order of reference and shall include therein his decision on all matters

 so submitted.” Id. § 1A-1, Rule 53(g)(1). Once filed,

 All or any part of the report may be excepted to by any party
 within 30 days . . . . Thereafter, and upon 10 days’ notice to the
 other parties, any party may apply to the judge for action on the
 report. The judge after hearing may adopt, modify or reject the
 report in whole or in part, render judgment, or may remand the
 proceedings to the referee with instructions.

 Id. § 1A-1, Rule 53(g)(2).

¶ 16 The parties do not dispute Blake was originally appointed by the trial court in

 the 2011 Referee Order to serve as a Rule 53 referee, and further that Blake filed a

 series of three reports complying with the 2011 Referee Order. However, the 2011

 Referee Order is the only order expressly appointing Blake as a referee. The current

 dispute is whether the Blake Report, created in accordance with the Settlement

 Agreement, was also done so as a Rule 53 referee’s report.

¶ 17 Here, the Settlement Agreement and the trial court’s Approval Order directed

 Blake to review the records of Southeast and to file a report including a balance sheet

 and statement of Southeast’s profits and losses, as was consistent with Blake’s role
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 under the 2011 Referee Order. Such direction is also consistent with the function of

 Rule 53, which provides for a reference “[w]here the taking of an account is necessary

 for the information of the court before judgment, or for carrying a judgment or order

 into effect.” N.C. Gen. Stat. § 1A-1, Rule 53(a)(2)(b).

¶ 18 Furthermore, the trial court’s Order for Completion of Capital Account Report,

 entered in 2019 upon a motion filed by Plaintiff after Blake failed to meet the deadline

 in the Settlement Agreement, stated “the Referee shall serve the report contemplated

 by paragraph 2(e) of the parties’ Settlement Agreement to each of the parties’ counsel

 of record . . . .” (emphasis added). Even further, in email communication dated the

 day before the 16 December 2019 hearing, Defendant’s counsel communicated with

 Blake about the status and contents of the “Referee’s report.”

¶ 19 Thus, although Blake satisfied his initial role as contemplated in the 2011

 Referee Order when he filed the three reports, the 2010 Action was not finally

 resolved until the trial court’s December 2019 Order, from which this appeal was

 taken.3 Accordingly, it is apparent from the trial court’s subsequent orders and the

 parties communications, Blake continued to serve as a Rule 53 referee until the entry

 of the trial court’s Order in 2019. The Blake Report, as contemplated in the parties’

 Settlement Agreement and the trial court’s Approval Order, is a referee report.

 3 The $170,349.00 Judgment entered against Defendant was intended to finally
 resolve 10 CVS 2964 and is now part of Defendant’s appeal.
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 Plaintiff’s Motion to Enforce sought to enforce the findings of the Blake Report as

 incorporated by the Settlement Agreement “through entry of a judgment directing

 that Defendant [Manning] pay Culbreth $170,349.00.” Thus, we review “factual

 findings made by a referee and adopted by the trial court” for “whether the challenged

 findings were supported by any competent evidence[,]” and conclusions of law made

 in accordance de novo. Bullock, 262 N.C. App. at 518-19, 822 S.E.2d at 659 (citation

 and quotation marks omitted).

 II. Settlement Agreement

¶ 20 Ultimately, Defendant “appeals the Court’s interpretation of the Blake Report

 and the trial court’s failure to require that all provisions of the Settlement Agreement

 were complied with prior to entering a judgment.” Because we determined the Blake

 Report was indeed a Rule 53 referee report, “[a]ppellate review of factual findings

 made by a referee and adopted by the trial court is limited to whether the challenged

 findings were supported by any competent evidence.” Bullock, 262 N.C. App. at 518,

 822 S.E.2d at 659 (citation and quotation marks omitted). Any conclusions of law

 made in accordance are reviewed de novo. Id. at 519, 822 S.E.2d at 659.

¶ 21 Paragraph 2(e) of the Settlement Agreement directed “The Blake Report . . .

 shall direct that either Plaintiff or Defendant shall make such payment . . . as is

 necessary to balance their Southeast capital accounts.” (emphasis added). The Blake

 Report, as submitted on 12 November 2019, reported: “Paragraph 2(e) directs me to
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 determine the capital account of each member of [Southeast]. As of December 31,

 2018 the capital account of [Defendant] Manning was a deficit of $501,965, the capital

 account of [Plaintiff] Culbreth was a deficit of $331,616. I have attached Exhibit A to

 this letter.” Exhibit A, attached to the Blake Report, reiterated the respective deficits

 and reports a combined total deficit of $833,581.00. The Blake Report also attached

 Exhibit B, which it clarified: “The purpose of Exhibit B is to provide the Court with a

 summary that may be useful in quantifying the facts and circumstances provided in

 previous paragraphs. . . . Presented in Exhibit B are three additional financial

 groupings that are not strictly capital contributions or distributions.” (emphasis

 added).

¶ 22 Defendant contends the Blake Report—prior to the addition of the

 Amendment—was not responsive to paragraph 2(e) because it did not expressly direct

 either party to “make such payment . . . necessary to balance their Southeast capital

 accounts[,]” and therefore paragraph 2(e) was only satisfied when Blake filed his

 Amendment directing Plaintiff to pay Defendant $261,530.00 on 16 December 2019.

 Defendant further contends no competent evidence supports the trial court’s decision

 to disregard Exhibit B.

¶ 23 Per the Blake Report, the respective capital accounts were as shown on Exhibit

 A: Defendant’s deficit of $501,965.00 and Plaintiff’s deficit of $331,616.00, combined

 for a total deficit of $833,581.00. Defendant’s argument asserting no competent
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 evidence supports the trial court’s decision to disregard Exhibit B is refuted by the

 language of Exhibit B—namely, the “three additional financial groupings” presented

 therein, “are not strictly capital contributions or distributions.”

¶ 24 However, the trial court’s subtraction of Plaintiff’s $331,616.00 deficit from

 Defendant’s $501,965.00 deficit, and the entry of judgment in the amount of the

 $170,349.00 difference, do not balance the two capital accounts. Therefore, reviewing

 this finding for support from competent evidence, we conclude the entry of default

 judgment against Defendant in the amount of $170,349.00 is not supported by

 competent evidence in the Record, including the Blake Report.

¶ 25 Instead, as Defendant correctly notes on appeal, to balance the parties’

 respective capital accounts, the finally balanced accounts would need to have equal

 deficits. To determine the amount required to balance the accounts, Plaintiff’s

 $331,616.00 deficit and Defendant’s $501,965.00 deficit would be added together,

 resulting in a combined deficit of $833,581.00, as shown in Exhibit A. The

 $833,581.00 deficit would then be divided by the two capital accounts, showing the

 capital accounts would be balanced with equal deficits of $416,790.50. Therefore, to

 ultimately balance the two Southeast capital accounts, Defendant would need to pay
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

 Plaintiff $85,174.50, which would render the respective capital accounts with equal

 deficits of $416,790.50.4

¶ 26 Accordingly, the trial court’s entry of Judgment against Defendant in the

 amount of $170,349.00 is not consistent with the Settlement Agreement’s direction

 for the capital accounts be balanced or with the Blake Report’s findings. On remand,

 the trial court may consider all competent evidence before it. Consistent with Rule

 53(g), the trial court “may adopt, modify or reject the report in whole or in part, render

 judgment, or may remand the proceedings to the referee with instructions.” N.C.

 Gen. Stat. § 1A-1, Rule 53(g)(2).

 Conclusion

¶ 27 Accordingly, for the foregoing reasons, the trial court’s Order to Enforce the

 Settlement Agreement and entering Judgment against Defendant is vacated. The

 matter is remanded to the trial court for further findings and proceedings in

 accordance with N.C.R. Civ. P. 53.

 4 Put another way and in the context of dissolving and winding-up the LLC, under

 this calculation, Defendant really owes Southeast $170,349.00 for distributions received in
 excess of his membership interest. In winding up the LLC, once Southeast “collects” the
 $170,349.00, see N.C. Gen. Stat. § 57D-6-07(d) (2019), Southeast’s assets would be marshalled
 and applied by distributing “[t]he balance to the interest owners as distributions in the
 manner provided in G.S. 57D-4-03.” Id. § 57D-6-08. N.C. Gen. Stat. § 57D-4-03 provides in
 relevant part: “Distributions to interest owners . . . after the dissolution of the LLC, may be
 made . . . in such amounts as determined by the LLC in proportion to the ratios that the
 aggregate combined contribution amounts of the interest owners bear to one another . . . .”
 Id. § 57D-4-03. Here, this would result in the $170,349.00 being distributed to each member
 according to their 50% interest, or $85,174.50 apiece.
 CULBRETH V. MANNING

 2021-NCCOA-177

 Opinion of the Court

VACATED AND REMANDED.

Judges TYSON and INMAN concur.